## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

KATALIN KAPPEL,

      **Plaintiff,**

**vs.**

BEACON YOUTH SERVICES INC.,
LIGHTHOUSE YOUTH SERVICES INC.,
BAYSIDE BOYS HOME INC. and ALLIANCE HR LLC

      **Defendants.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, KATALIN KAPPEL, by and through her undersigned counsel, sues the Defendants, BEACON YOUTH SERVICES, INC., (hereinafter referred to as "BEACON"), LIGHTHOUSE YOUTH SERVICES INC., (hereinafter referred to as "LIGHTHOUSE"), BAYSIDE BOYS HOME INC., (hereinafter referred to as "BAYSIDE") and ALLIANCE HR LLC, (hereinafter referred to as "ALLIANCE"), (collectively known as "DEFENDANTS") and alleges as follows:

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 because this civil action arises under the Constitution, laws, or treaties of the United States.

2.      Venue lies within the United States District Court for the Middle

District of Florida, Tampa Division, in accordance with 28 U.S.C. § 1391(b) because Plaintiff resides in this Judicial District and because a substantial part of the events giving rise to this claim occurred in this Judicial District.

## ADMINISTRATIVE PREREQUISITES

3.  On February 8, 2022, Plaintiff timely filed Charges of Discrimination with the Equal Opportunity Employment Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR").

4.  On August 29 and 30, 2022,  the EEOC issued Dismissals and Notices of Rights related to Plaintiff's Charges of Discrimination.  This Complaint is filed within ninety (90) days of the issuance of the Dismissals and Notices of Rights; therefore, Plaintiff has met all conditions precedent to filing this Complaint.

5.  Plaintiff has satisfied all conditions precedent, therefore jurisdiction over this claim is appropriate pursuant to Chapter 760, *Florida Statutes*, because more than one-hundred and eighty (180) days have passed since the filing of the Charges.

## PARTIES

6.  Plaintiff resides in Hillsborough County, Florida.

7.  Defendant Beacon Youth Services Inc. is a Florida Profit Corporation, licensed and authorized to conduct business in the State of Florida and doing business within Pinellas County.

8.     Defendant Lighthouse Youth Services Inc. is a Florida Profit Corporation, licensed and authorized to conduct business in the State of Florida and doing business within Pinellas County.

9.     Defendant Bayside Boys Home Inc. is a Florida Profit Corporation, licensed and authorized to conduct business in the State of Florida and doing business within Pinellas County.

10.     Defendant Alliance HR LLC is a Foreign Limited Liability Corporation, licensed and authorized to conduct business in the State of Florida and doing business within Palm Beach County.

11.     Defendants are joint employers and/or a common or integrated enterprise.  Namon Wright, owns Beacon Youth Services, Inc., Bayside Boys Home, Inc. and Lighthouse Youth Services Inc. and all three group homes have common ownership and management, regularly share employees, and utilize the same payroll/HR company (Alliance HR, LLC).

12.     Defendants are employers as defined by the laws under which this action is brought and employ the required number of employees.

## FACTUAL ALLEGATIONS

13.     Plaintiff is a 26-year-old female with disabilities; specifically, Bi-Polar Disorder and Post Traumatic Stress Disorder (PTSD).  As a result of her disabilities,

Plaintiff sometimes has difficulty processing information and getting out her thoughts.   Defendants' ownership and supervisors were well-aware of her disabilities.

14.     On or about August 16, 2021, Plaintiff began her employment with Defendants as a Direct Care Worker.

15.     Plaintiff was a good employee, received a positive performance evaluation and received a pay raise.

16.     During Plaintiff's employment with Defendants, Namon Wright regularly made sexist comments to Plaintiff and in Plaintiff's presence.

17.     Within the first few weeks of Plaintiff's employment, Wright said: "This is why you need a man on shift with you."

18.     In or around late August 2021, Wright stated that, in a family, a man deserves more respect than a woman.  He later commented: "Don't take this the wrong way, but you're a very smart, attractive Caucasian woman and Black women feel threatened by you."

19.     On September 10, 2021, and September 30, 2021, Plaintiff met with Wright regarding her job performance.   Wright commended Plaintiff's performance, but also talked about his personal life, that he was single and was being sued for sexual harassment by a former female employee that he dated.

20.     In  or around early October 2021, Plaintiff attended a training with

Wright. In talking about the group home, Wright stated that there needed to be a "father and mother" in the house and that a mother cannot provide what a father can.

21.     On several occasions, Plaintiff made complaints about Wright's sexist comments to Greg Jones (House Manager) and told him that the comments made her feel uncomfortable.

22.     Jones told Plaintiff that he would talk to Wright about it, but he ever documented Plaintiff's complaints and did not tell Plaintiff if he spoke with Wright.

23.     On or about October 8, 2021, Plaintiff worked her 3:00 p.m. to 11:00 p.m. shift. At the end of her shift, Plaintiff learned that there was not an overnight replacement to cover the next shift.

24.     Plaintiff contacted Wright and around 1:00 a.m., Maria Brown arrived to take over the night shift.  Brown was the manager at Bayside.  When Brown arrived, she smelled of alcohol, was slurring her words, and appeared intoxicated.

25.     Plaintiff and Brown went into the office, and Brown sat behind the desk, while Plaintiff sat in a chair across the desk from her and close to the door.

26.     Brown told Plaintiff that she had been drinking and doing Karaoke at a bar.  Since Brown had been drinking, Plaintiff stayed for a few hours to ensure the safety of the children.

27.    Plaintiff and Brown spoke for a while, and Plaintiff provided her with shift change and other work-related information.  They talked as they often did about work and life.

28.    During the conversation, Brown told Plaintiff that she had been dating Wright for approximately seven years and that, in the past, women made complaints about her inappropriate behavior to Wright and they were no longer employed.

29.    Brown also told Plaintiff that a former employee was suing Wright for wrongful termination but that the ex-employee would lose because Wright could fire anyone he wants for any reason because "Florida is an at-will state." They also talked about Plaintiff's disabilities, how Plaintiff hired a personal trainer and that the training was helping with the physical and mental obstacles she was facing in her life.

30.    Then, out of nowhere, Brown began making sexual advances toward Plaintiff.   She started with talking about being with a woman sexually. Immediately, Plaintiff closed the office door because they had children under their care who suffered serious sexual trauma and did not want to them to hear how Brown was talking.

31.    Plaintiff tried to distract and change topics, but Brown continued. She asked Plaintiff if she felt a "chill in the air" and said: "Look what you did to

me."  Confused, Plaintiff asked her what she meant, and she said: "Look at my nipples, they are hard."  Brown began to use her fingers in a sexual and seductive manner, rubbing her right breast and nipple.

32.    Brown asked if Plaintiff wanted to see her breasts and Plaintiff said "no."  Brown replied: "Come on, I know you want to see it."  Again, Plaintiff said "no" and that it was not appropriate.  Brown said: "No one will know."  Plaintiff replied: "I said no."

33.    Brown then instructed Plaintiff to turn the lights out.  Plaintiff kept avoiding it and refusing to turn the lights off, but Brown persisted.

34.    Ultimately, Plaintiff complied with her request, turned the lights off, and Brown said: "come here and feel it."  Again, Plaintiff said "no."  Then, Brown took out her breast and exposed it.

35.    Despite the lights being out, the glow from the computer monitor lit up the room.  At that point, Brown relentlessly asked/demanded that Plaintiff touch her exposed breast.  Plaintiff refused repeatedly but Brown would not stop. In order to get her to stop, Plaintiff quickly touched it with the tip of her finger and quickly pulled her hand away.

36.    Then, Brown asked if Plaintiff would suck on her breast.  Again, Plaintiff declined.  Then Plaintiff turned the light on in the office and sat down in her chair.

37.    Brown told Plaintiff that she was dating Wright, so anything that Brown said Wright would support.  She then acted as if nothing happened and continued on with work.

38.    Given Brown's intoxication and behavior, Plaintiff was worried about the safety of the children, so she stayed at work for a few more hours until Brown appeared to sober up.

39.    On or about October 11, 2021, Plaintiff reached out to Jones via text and asked to speak with him immediately regarding the situation from the prior Friday (October 8, 2021).

40.    Plaintiff followed up and informed Jones that she needed to speak with him as soon as possible and was fearful of reporting for her shift the next day (October 12, 2021).

41.    Jones sent Plaintiff a text message stating that he could not offer her the additional schedule "due to recent events," which Plaintiff understood to mean the incident with Brown.

42.    Plaintiff spoke with Jones later in the afternoon and asked why there was a sudden change regarding her schedule.  Jones said that he knew Plaintiff was driving her car and what he said caused her anxiety so they could talk when Plaintiff returned to work the next day.  Plaintiff told him that she wanted to discuss it, but Jones said that he had someone in his office and could not talk.

43.    On October 12, 2021, Plaintiff spoke with Jones via phone. Plaintiff explained to him everything that happened with Brown the prior Friday and that she felt sexually harassed.

44.    Jones seemed supportive and stated that he was "tired of this shit with these people" and assured Plaintiff that he would take care of it and that Brown would no longer be permitted to come to Beacon.  Jones further stated that he would finish the conversation with Plaintiff when she arrived for her shift at 3:00 p.m.

45.    Plaintiff arrived to work early (around 2:30 p.m.) and Jones was present.  Plaintiff explained what happened with Brown to Jones.  Jones told Plaintiff that he talked to Mr. Wright after he spoke with her that morning.

46.    When Wright arrived, Jones instructed Plaintiff to explain what happened with Brown to Wright.  Plaintiff explained to Wright and ones what happened with Ms. Brown on October 8, 2021.

47.    Wright asked if Brown kidnapped her and pressed Plaintiff on why she did not leave the room.  Plaintiff explained that, due to her disabilities, sometimes she shuts down in stressful and intimidating situations.

48.    Wright stated that if Plaintiff was claiming that she was sexually harassed by Brown, then he would have to report it to the police "to protect [her] rights."  At that point, Jones left.

49.    When the police officer arrived, Plaintiff kept trying to explain what happened to the officer, but either he or Wright would interrupt her before she could explain.

50.    The officer told Plaintiff there was nothing he could do because it was a "she said, she said."  However, the officer never took a statement from Plaintiff and did not take any notes of the conversation. The officer also stated that Plaintiff "willingly" touched Brown and it was willing because she did not have a "gun to [her] head," ignoring the vulnerability that Plaintiff had due to her disability and the power and authority that Brown had over Plaintiff.

51.    Wright began accusing Plaintiff of lying and making up the story. Plaintiff kept trying to explain to Wright that one of the effects of her Bi-Polar Disorder is that it takes time for her to process and get her thoughts out, but he just became more aggressive in calling Plaintiff a liar.

52.    Again, Plaintiff pleaded with Wright and the officer to be patient with her because her Bi-Polar and PTSD make it difficult for her to quickly recount events.

53.    Wright told Plaintiff that Bi-Polar "doesn't do that" and the officer agreed.  Plaintiff told Wright that she would appreciate if he did not tell her how her Bi-Polar Disorder affects her.

54.     Wright   then   terminated   Plaintiff's   employment   for   alleged "insubordination."

55.     Plaintiff asked Wright what she did that was insubordinate, and he told her that she "talked back" to him, was dismissed and could walk to her car on her own or be escorted by the officer.

56.     Plaintiff declined the police escort and told Wright that she felt he was retaliating against her for making the complaint.  He promptly responded that he could fire Plaintiff for anything because he was an "at-will employer."

## COUNT I
## TITLE VII - SEXUAL HARASSMENT

57.     Plaintiff   realleges   and   adopts,   as   if   fully   set   forth   herein,   the allegations stated in Paragraphs one (1) through fifty-six (56).

58.     Plaintiff is a member of a protected class.

59.     The aforementioned actions by Maria Brown and Namon Wright constitute unwelcome sexual harassment.

60.     The harassment by Brown and Wright was sufficiently severe and/or pervasive to alter the terms and conditions of Plaintiff's employment.

61.     Defendants knew of or should have known of the harassment to Plaintiff.

62.     The aforementioned actions constitute discrimination on the basis of sex, in violation of Title VII of the Civil Rights Act.

63.     Defendants' actions were intentional and encouraged in an environment where degradation based on sex was common and tolerated.

64.     As a result of Defendants' unlawful sexual harassment, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendants:

        a.     Back pay and benefits;

        b.     Interest;

        c.     Front pay and benefits;

        d.     Compensatory damages;

        e.     Pecuniary and non-pecuniary losses;

        f.     Costs and attorneys' fees;

        g.     Punitive damages; and

        h.     For any other relief this Court deems just and equitable.

## COUNT II
## FLORIDA CIVIL RIGHTS ACT - SEXUAL HARASSMENT

65.     Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through fifty-six (56).

66.     Plaintiff is a member of a protected class.

67.     The aforementioned actions by Maria Brown and Namon Wright constitute unwelcome sexual harassment.

68.    The harassment was sufficiently severe and/or pervasive to alter the terms and conditions of Plaintiff's employment.

69.    Defendants knew or should have known of the harassment of Plaintiff.

70.    The aforementioned actions created a hostile environment and constitutes discrimination on the basis of sex, in violation of the Florida Civil Rights Act.

71.    The sexual harassment and conduct of Brown and Wright created a hostile work environment which interfered with Plaintiff's ability to perform her job.

72.    Defendants' actions were intentional and encouraged an environment where degradation based on sex was common and tolerated.

73.    As a result of Defendants' unlawful sexual harassment and retaliation, Plaintiff has suffered and continues to suffer damages for pecuniary losses, mental anguish, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has also suffered lost wages and benefits and lost employment opportunities.

WHEREFORE, Plaintiff demands a trial by jury and judgment against Defendants for:

a.    Back pay and benefits;

b.      Interest in back pay and benefits;

c.      Front pay and future benefits;

d.      Loss of future earning capacity;

e.      Emotional pain;

f.      Suffering;

g.      Attorneys fees and costs;

h.      Punitive damages;

i.      Inconvenience; and

j.      For any other relief this Court deems just and equitable.

## COUNT III
## TITLE VII - RETALIATION

74.      Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through fifty-six (56).

75.      Plaintiff suffered an adverse employment action for opposing an employment practice made unlawful by Title VII.  Specifically, Plaintiff made good-faith complaints of sex-based harassment and discrimination and was terminated from her employment.

76.      The above described acts of retaliation constitute a violation of Title VII, 42 U.S.C. Section 2000 *et seq.*

77.      As a result of Defendants' unlawful retaliation, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff   prays for the following damages against Defendants:

      a.    Back pay and benefits;

      b.    Interest on back pay and benefits;

      c.    Front pay and benefits;

      d.    Compensatory damages;

      e.    Pecuniary and non-pecuniary losses;

      f.    Costs and attorneys' fees;

      g.    Punitive damages; and

      h.    For any other relief this Court deems just and equitable.

## COUNT IV
## FLORIDA CIVIL RIGHTS ACT - RETALIATION

78.    Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through fifty-six (56).

79.    Plaintiff suffered an adverse employment action for opposing an employment practice  made unlawful by the Florida Civil Rights Act.

80.    The aforementioned actions by Maria Brown and Namon Wright constitute retaliation by Defendants in violation of  Florida Statutes Chapter 760.

81.    As a result of Defendants' unlawful  retaliation, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff demands a trial by jury and judgment against Defendants for:

a.    Back pay  and benefits;

b.    Interest in back pay and benefits;

c.    Front pay and future benefits;

d.    Loss of future earning capacity;

e.    Emotional pain;

f.    Suffering;

g.    Attorneys' fees and costs;

h.    Punitive damages;

i.    Inconvenience; and

j.    For any other relief this Court deems just and equitable.

## COUNT V
## AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT OF 2008 ("ADAAA") DISABILITY DISCRIMINATION

82.    Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through fifty-six (56).

83.    Plaintiff is an individual entitled to protection under the Americans with Disabilities Act, as amended, 42 U.S.C. §12112 *et seq*.

84.    Plaintiff is an employee within the meaning of the Americans with Disabilities Act, as amended.

85.     Plaintiff is an individual with a disability within the meaning of the Americans with Disabilities Act, as amended.  Specifically, Plaintiff's Bi-Polar Disorder and PTSD substantially limit one or more major life activities or major bodily functions.

86.     Plaintiff was a qualified individual with a disability within the meaning of the Americans with Disabilities Act, as amended, because Plaintiff, with or without a reasonable accommodation, could perform the essential functions of her job.

87.     By the conduct described above, Defendants engaged in unlawful employment practices and discriminated against Plaintiff on account of her known disability, and/or because Defendants regarded her as having a disability, and/or because of Plaintiff's record of having a disability in violation of the Americans with Disabilities Act, as amended. Specifically, Defendants terminated Plaintiff's employment.

88.     The above-described acts of disability discrimination constitute a violation of the Americans with Disabilities Act, as amended, for which Defendants are liable.

89.     Defendants' unlawful and discriminatory employment practices toward Plaintiff were intentional.

90.     Defendants' unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federal-protected rights of Plaintiff.

91.     As a result of Defendants' unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendants:

  a. Back pay and benefits;

  b. Prejudgment interest on back pay and benefits;

  c. Front pay and benefits;

  d. Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

  e. Punitive damages;

  f. Attorneys' fees and costs;

  g. Injunctive relief; and

  h. For any other relief this Court deems just and equitable.

## COUNT VI
## FLORIDA CIVIL RIGHTS ACT ("FCRA") – DISABILITY DISCRIMINATION

92.   Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through fifty-six (56).

93.     Plaintiff is an individual entitled to protection under the Florida Civil Rights Act, *Fla. Stat.* §760, *et seq.*

94.     Plaintiff is an employee within the meaning of the Florida Civil Rights Act.

95.     Plaintiff is an individual with a disability/handicap within the meaning of the Florida Civil Rights Act.  Specifically, Plaintiff's Bi-Polar Disorder and PTSD substantially limit one or more major life activities or major bodily functions.

96.     Plaintiff was a qualified individual with a disability within the meaning of the Florida Civil Rights Act because Plaintiff, with or without a reasonable accommodation, could perform the essential functions of her job.

97.     By the conduct described above, Defendants engaged in unlawful employment practices and discriminated against Plaintiff on account of her known disability, and/or because Defendants regarded her as having a disability, and/or because of Plaintiff's record of having a disability in violation of the Florida Civil Rights Act.  Specifically, Defendants terminated Plaintiff's employment.

98.     The above-described acts of disability discrimination constitute a violation of the FCRA, for which Defendants are liable.

99.     Defendants' unlawful and discriminatory employment practices toward Plaintiff were intentional.

100.    Defendants' unlawful and discriminatory employment practices were done with malice or with reckless indifference to the state-protected rights of Plaintiff.

101.    As a result of Defendants' unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendants:

      a.     Back pay and benefits;

      b.     Interest on back pay and benefits;

      c.     Front pay and benefits;

      d.     Compensatory damages, including damages for mental anguish, loss of dignity, and other intangible injuries;

      e.     Punitive Damages

      f.     Pecuniary and non-pecuniary losses;

      g.     Attorney's fees and costs; and

      h.     For any other relief this Court deems just and equitable.

WHEREFORE, Plaintiff respectfully request all legal and equitable relief allowed by law including judgment against Defendants for prejudgment interest, payment of  reasonable attorneys' fees and costs incurred in the prosecution of the claim and such other relief as the Court may deem just and proper.

**DATED** this 16th day of November 2022.

FLORIN GRAY BOUZAS OWENS, LLC

/s/Gregory A. Owens
GREGORY A. OWENS, ESQUIRE
Florida Bar No.: 51366
greg@fgbolaw.com
WOLFGANG M. FLORIN, ESQUIRE
Florida Bar No.: 907804
wflorin@fgbolaw.com
16524 Pointe Village Drive
Suite 100
Lutz, Florida 33558
(727) 220-4000
(727) 483-7942 (fax)
*Trial Attorneys for Plaintiff*